351 F.2d 429
 UNITED STATES of America ex rel. Anthony RUSSO, Appellant,
v.
The STATE OF NEW JERSEY and the Principal Keeper of the
State Prison atTrenton, New Jersey.
UNITED STATES of America ex rel. Frank BISIGNANO, Appellant,
v.
The STATE OF NEW JERSEY and the Principal Keeper of the
State Prison atTrenton, New Jersey.
 Nos. 14833, 14869.
 United States Court of Appeals Third Circuit.
 Argued Nov. 12, 1964.
Decided May 20, 1965, Rehearing Denied Oct. 13, 1965.
 
 Irving I. Vogelman, Jersey City, N.J. (Raymond A. Brown, Jersey City, N.J., on the brief), for appellant-petitioner, Anthony Russo.
 Richard F. Plechner, Metuchen, N.J., for appellant Frank Bisignano.
 Brendan To Byrne, County Prosecutor of Essex County, Newark, N.J. (Peter Murray, Barry H. Evenchick, John G. Graham, Asst. County Prosecutors, of counsel and on the brief), for appellees.
 Jacques H. Fox, President, District Attorneys' Association of Pennsylvania, Media, Pa., James C. Crumlish, Jr., Dist. Atty. for City and County of Philadelphia, Joseph M. Smith, Asst. Dist. Atty., Philadelphia, Pa., George M. Scott, President National District Attorneys' Ass'n, Minneapolis, Minn., John W. Hayden, Jr., Deputy Atty. Gen., of New Jersey, Criminal Investigation Section, Trenton, N.J., for groups wishing to intervene.
 Arthur J. Sills, Atty. Gen. of N.J. (John W. Hayden, Jr., Deputy Atty. Gen. of counsel and on the brief), for State of New Jersey, amicus curiae, on rehearing.
 Before BIGGS, Chief Judge, and FORMAN and SMITH, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 These are appeals from denials of writs of habeas corpus by the court below. The petitioners-appellants, Russo and Bisignano, with a co-defendant, LaPierre, were indicted and convicted of murdering a policeman in Newark, New Jersey. The murder was committed while Russo and Bisignano were engaged in the commission of the felony of attempting to rob a tavern. The convictions were affirmed by the Supreme Court of New Jersey, State v. LaPierre, 39 N.J. 156, 188 A.2d 10 (1963). Bisignano attempted to have his conviction reviewed by the United States Supreme Court, but certiorari was refused. Bisignano v. New Jersey, 374 U.S. 852, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963).
 
 
 2
 The operative facts are as follows. At approximately 11:15 on the night of March 15, 1961, Russo and Bisignano, with LaPierre, attempted to 'holdup' a tavern in Newark, New Jersey. Bisignano and Russo entered the tavern; Russo, brandishing a revolver, announced their purpose. Joseph Hagel, an off-duty policeman, was present and drew a pistol in an attempt to prevent the robbery. Shots were exchanged; Hagel was mortally wounded, while Russo was struck by a bullet in his right arm. Russo, LaPierre and Bisignano then fled from the tavern. LaPierre was quickly apprehended by Newark police officers less than three blocks from the scene of the crime. Soon thereafter, Russo was seized approximately five blocks from the tavern. Bisignano was arrested the following morning.
 
 
 3
 When LaPierre and Russo were placed under arrest, they were first taken back to the tavern. None of the four eye witnesses to the shooting was able to identify LaPierre since, as it later developed, LaPierre had been stationed outside of the tavern in the 'getaway' car. Russo was identified immediately as possibly being one of the two men who had attempted the robbery, although none of the four witnesses positively identified Russo.
 
 
 4
 LaPierre was then taken to police headquarters while Russo was taken to a hospital for treatment of his wounded right arm. He was admitted to the hospital in the early morning of March 16. After emergency treatment was rendered to Russo, he was questioned for a short time by four members of the Newark police force, but he refused to admit complicity in the crime. Russo also refused to permit an operation to excise the bullet from his arm. However, the pain from the bullet became excruciating and, on March 17, he submitted to an operation. He was accompanied to the operating room by a police officer. Upon return to his hospital bed from the operating room, Russo, for the first time, admitted his participation in the attempted hold up under the questioning of two police detectives. After the operation, Russo was detained at the hospital until March 24, at which time he was released from the hospital in the custody of the police. It is undisputed that during Russo's entire detention in the hospital he was under constant police guard. In addition, he was shackled to the bed to prevent, we assume, any possibility of escape. Interrogation at the hospital was sporadic and it appears that no sustained interrogation was made between the oral admissions on the 17th and his release from the hospital on the 24th.
 
 
 5
 Upon Russo's release from the hospital he was taken directly to an interrogation room at police headquarters. He was questioned there for approximately two hours before he confessed orally. Russo was then detained in the interrogation room for an additional three hours so that his oral statement could be reduced to writing and signed by him.
 
 
 6
 Russo was not taken to a magistrate for a preliminary hearing until March 28. At that time, Russo's hearing was postponed until April 4. No explanation appears in the record as to the reason for the postponement,[1] but it is relevant to note that the Grand Jury returned an indictment on March 30.
 
 
 7
 At the trial in the Essex County Court, Law Division, held at Newark, New Jersey, there was psychiatric testimony to the effect that Russo was within 'the lower reaches of the average range of intelligence.' There was also evidence that Russo 'was markedly deficient with respect to his capacity for verbal abstraction, the capacity to think abstractly, and the capacity to evaluate external reality with any validity, with any substance, with any genuine understanding of what is going on around him * * * that his social judgment and perceptual alertness were massively impaired with respect to what the norm might be.'
 
 
 8
 Bisignano was arrested on the morning of March 16 at approximately 10:30 and was taken immediately to a soundproof interrogation room. He was questioned for about two and a half hours by at least nine different policemen working in relays of four and five. During this interrogation period LaPierre was seated outside of the interrogation room. At frequent intervals, policemen questioning LaPierre would check his answers with Bisignano's answers and Bisignano's answers were checked against LaPierre's answers. In addition, the answers of both were being checked against a statement given to the police by Veronica Szmatowicz, who was Russo's financee, who had been arrested with Bisignano that morning. As a result of this cross-checking of stories, it is difficult to determine accurately how many police officers actually participated in the questioning of Bisignano.
 
 
 9
 Bisignano finally admitted orally his complicity in the crime at about 1:30 P.M. There was then a break in the interrogation process of about two hours. Then, from approximately 3:30 P.M. until approximately 6:30 P.M., Bisignano's oral statement was reduced to writing and signed by him. He was not permitted to see any visitors until after his written statement was signed.
 
 
 10
 Bisignano was not taken to a magistrate until March 20, at which time his hearing was postponed to March 28. The hearing was again postponed until April 4, at which time he had already been indicted. See note 1, supra.
 
 
 11
 On the day following their respective confessions, Russo and Bisignano were taken to the tavern and asked to re-enact their crime, which they did, thereby further incriminating themselves.
 
 
 12
 The court below made an affirmative finding, well-supported and uncontroverted by the record, that neither Russo nor Bisignano were at any time prior to the signing of their confessions informed that they had a right to remain silent, that they had a right to counsel and that anything they said could be used against them. It appears that it was not until April 4 that the two were informed of their rights.
 
 
 13
 It should be noted further that Bisignano rested on the transcript of the state court trial at his federal habeas corpus hearing. Russo offered some additional evidence in the way of new evidence in addition to his reliance on the state trial transcript.
 
 I. ILLEGAL DETENTION
 
 14
 Russo and Bisignano assert that any confession made during an illegal detention is inadmissible at trial. There is no doubt that the detentions were illegal under New Jersey law, see note 1, supra, and that the Newark police force disregarded the rights secured to an arrested person under the law of New Jersey. The petitioners-appellants press the point that the circumstances under which their confessions were obtained transgressed the rights secured to them by the Fourteenth Amendment and therefore were inadmissible in evidence. While it is the rule in federal prosecutions that confessions obtained in these circumstances must be suppressed, Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), this exclusionary rule is a function of the supervisory power of the federal courts over federal prosecutions and does not rise to the dignity of a constitutional prohibition. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Stroble v. State of California, 343 U.S. 181, 197, 72 S.Ct. 599, 96 L.Ed. 872 (1952); Gallegos v. State of Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86 (1951). It follows that this defense asserted by the appellants must fall.
 
 II. PHYSICAL COERCION
 
 15
 Both Russo and Bisignano testified that the confessions were the product of physical beatings and punishment, accompanied by threats of more physical harm. Russo also testified that while at the hospital he was subjected to physical punishment and torturous treatment by the police. Bisignano testified that the police threatened to arrest his wife if he did not confess. The evidence of the petitioners was corroborated to some degree by the statements of various witnesses who testified that they saw bruises or heard complaints by Russo and Bisignano of police brutality. The police denied all accusations of physical abuse, threats or promises and, in fact, testified that both petitioners cooperated with them in solving the case. The State produced additional testimony to rebut the inferences of physical abuse. It is clear that there was a conflict in the evidence and that the issue was solely one of credibility. Under these circumstances, we must accept the findings of fact made by the triers of fact, here the New Jersey state court and the court below. Both found no physical coercion and we are bound by that finding. Haynes v. State of Washington, 373 U.S. 503, 515, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); United States ex rel. Johnson v. Yeager, 327 F.2d 311 (3 Cir.), cert. denied, New Jersey v. Godfrey, 377 U.S. 977, 984, 84 S.Ct. 1882, 12 L.Ed.2d 745 (1964); United States ex rel. Smith v. State of New Jersey, 323 F.2d 146 (3 Cir. 1963), cert. denied, 377 U.S. 1000, 84 S.Ct. 1927, 12 L.Ed.2d 1049 (1964).
 
 III. MENTAL OVERBEARING
 
 16
 Both petitioners also claim that the length of their detentions, when combined particularly in the case of Russo with his mental condition, rendered the confessions coerced in that they were the products of overborne minds. There is no 'litmus-paper test' that a court can look to or apply in order to determine whether a statement, amounting to a confession, was made voluntarily, i.e., that it was the product of a free will. Rather, we must look to all the relevant factors and all must be considered and weighed together. Culombe v. Connecticut, 367 U.S. 568, 601, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). See Lynumn v. State of Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). In the case of Bisignano the factors as they appear on the record show that the questioning was of rather short duration, although conducted in the absence of counsel and with no warning of his constitutional safeguards. However, we think that within the decisions of this circuit, there is no question that the confession was not coerced. See United States ex rel. Johnson v. Yeager, supra; United States ex rel. Smith v. State of New Jersey, 323 F.2d 146 (3 Cir. 1963), cert. denied, 377 U.S. 1000, 84 S.Ct. 1927, 12 L.Ed.2d 1049 (1964); United States ex rel. Smith v. State of New Jersey, 322 F.2d 810 (3 Cir. 1963), cert. denied, 376 U.S. 928, 84 S.Ct. 678, 11 L.Ed.2d 623 (1964).
 
 
 17
 As to Russo, were we confronted only with the police activity at the police station we could conclude without difficulty that Russo's statement there made, the equivalent of a confession, was voluntary. But we have more. There was the questioning of Russo at the hospital, the crucial portion of which was conducted by the two police detectives shortly after the operation had been performed and when he was shackled by his ankle to his bed. Russo admitted, as stated previously, his active participation in the attempted hold up. Interrogation of Russo under the circumstances seems repugnant to concepts of fairness. In addition there is the psychiatric testimony tending to show that Russo was susceptible to suggestions and unable to relate his present actions to future consequences. There is the additional problem that even when he was questioned at the police station Russo was in a weakened condition and his arm was still in a sling. These factors, when combined with the lack of any warning to Russo as to the constitutional safeguards to which he was entitled and his illegal detention, could create an inference that the confession was the product of an overborne mind.
 
 
 18
 On the other hand, however, it is possible to draw the inference that Russo had declined to permit the removal of the bullet from his arm because of his fear that ballistics tests would prove that bullet had been fired from the revolver of the police officer who was killed at the scene of the crime, thus implicating Russo in the attempted robbery and murder. The further inference can be drawn that after the bullet had been removed Russo gave up all hope of extricating himself from the situation in which he found himself and confessed the attempted robbery. This inference is strengthened by the fact that the confession occurred almost immediately upon Russo's return from the operating room.
 
 
 19
 On balance, we conclude that this inference outweighs any inference of coercion on these facts.
 
 IV. DENIAL OF RIGHT TO COUNSEL
 
 20
 Both Russo and Bisignano argue that the failure of the police to warn them of their constitutional right to remain silent, of their constitutional right to counsel and to inform them that anything that they said might be held against them requires that their oral and written statements be excluded and hence necessitates the reversal of the judgments of conviction.[2]
 
 
 21
 In respect to coerced confessions, the Supreme Court, in recent years, has taken the position that such confessions are excluded not only because they may be unreliable but also because they offend the concept of the accusatory system, an essential part of the fundamental legal philosophy under which this nation was founded. See Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); see also 112 U.Pa.L.Rev. 394 (1964). 'Our decisions under that Amendment (the Fourteenth) have made clear that convictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system-- a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth.' Rogers v. Richmond, 365 U.S. 534, 540-541, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961). Reliance on the accusatory system has introduced into the opinions of the Supreme Court additional safeguards to protect a defendant against the introduction into evidence of possibly coerced statements. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). These same concepts have compelled a greater reliance on the presence or absence of counsel as a factor in determining the voluntariness of a confession. Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Lynumn v. State of Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954). See generally, Kamisar & Choper, The Right to Counsel in Minnesota: Some Field Findings & Legal-Policy Observations, 48 Minn.L.Rev. 1 (1963); Enker & Elsen, Counsel for the Suspect: Massiah v. United States and Escobedo v. Illinois, 49 Minn.L.Rev. 47 (1964); Note, An Historical Argument for the Right to Counsel During Police Interrogation, 73 Yale L.J. 1000 (1964). In Spano, supra, four Justices would have reversed the conviction solely because of the absence of the defendant's counsel at a post-indictment interrogation.
 
 
 22
 Aside from the expansion of the importance of the aid of counsel for the accused in determining the voluntariness of a confession, the Supreme Court has expanded Sixth Amendment protection[3] as an independent ground for exclusion of a confession or for granting a new trial. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court held that a criminal defendant in a state court is entitled to the same right to counsel as a criminal defendant in a court of the United States. Compare Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
 
 
 23
 The effect of Gideon has been to expand the right to counsel and there has also been a widening of the concept of the stage or stages when that right attaches. We conclude that it is now the law that the right to counsel is present at every critical stage of the proceedings. It has definitely been settled that the right attaches at arraignment where, under state law, that stage is critical as frequently it must be deemed to be. White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); see Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).
 
 
 24
 More recently, in 1964 the Supreme Court, in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246,[4] has held that, under certain circumstances, the right to counsel attaches at the interrogation level. These cases hold that where the right attaches any confession obtained in the absence of counsel must be suppressed independent of any issue of the voluntariness of the confession. In Massiah, the petitioner had already been indicted and was free on bail. Massiah's alleged partner in crime agreed to cooperate with the police. By prearrangement with the police, a radio transmitter was installed in the partner's automobile, thereby enabling the police to hear conversations conducted in the car. The partner talked with Massiah in the car and obtained incriminating statements from him. The Supreme Court held that the statements were inadmissible since the police practice offended Massiah's right under the Sixth Amendment to the protection of counsel, relying on the concurring opinions in Spano, supra. The majority opinion treated this surreptitious questioning as an interrogation by the police and held that at this point in the proceedings, i.e. post-indictment, Massiah had the right to the assistance of counsel.
 
 
 25
 In Escobedo, the Supreme Court extended the right to counsel to a person who had not been indicted or arraigned, but who had been taken into custody and interrogated by the police at the police station. Escobedo had an attorney and had conferred with him a few days prior to his interrogation at the police station. During his detention by the police Escobedo's attorney was present in the building and attempted to speak to his client but was denied access to him by the police. Escobedo also requested permission to see his counsel, but the police denied that request. The Supreme Court stated: 'We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constrcutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' * * * and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.' 378 U.S. at 490-491, 84 S.Ct. at 1765. The Court again stated its holding at 492, 84 S.Ct. at 1766: 'We hold only that when the process shifts from investigatory to accusatory-- when its focus is on the accused and its purpose is to elicit a confession-- our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer.'
 
 
 26
 The concern of the Supreme Court in Escobedo was to determine the point at which the right to counsel attached. Not every police interrogation requires the presence of counsel, but when the focus of the investigation shifts from inquiries of a general nature to the investigation of the acts of a particular suspect counsel for the individual subject to the interrogation must be present unless counsel be intelligently waived by the suspect. United States v. Konigsberg, 336 F.2d 844, 853 (3 Cir.), cert. denied, 379 U.S. 933, 85 S.Ct. 334, 13 L.Ed.2d 344 (1964). At the time the confessions of Bisignano and Russo were obtained the focus had shifted. When Bisignano confessed the police already had the statement of LaPierre which implicated both Bisignano and Russo. At the time Russo confessed the police had the confessions of both LaPierre and Bisignano. In addition, when Bisignano and LaPierre confessed the police also had the statement of Veronica Szematowicz which incriminated Bisignano and Russo. Additionally, as to Russo, the police were in possession of a liquor bottle and its carton, both of which contained Russo's fingerprints. The bottle and the container were found in the 'getaway' car parked in front of the tavern. If this were not enough, there is also the fact that both Bisignano and Russo fitted the general descriptions given to the police by eye witnesses and Russo had been identified as possibly being one of the two holdup men. We hold on these facts that the focus had shifted from a general inquiry into an unsolved crime to an accusatory process involving Bisignano and Russo.
 
 
 27
 Nor can it be contended successfully that the questioning process here did not lend itself 'to eliciting incriminating statements.'
 
 
 28
 There is, however, a factual distinction between the cases at bar and Escobedo. In Escobedo, there had been a request for counsel; here there was none. Is this factual distinction a tenable ground for distinguishing Escobedo from the cases at bar?
 
 
 29
 Certainly it is untenable to ground a distinction on the fact that Escobedo had already hired his own attorney while Bisignano and Russo would have required appointed counsel. Such a distinction smacks of denial of equal protection once it is determined that there is a right to counsel at this stage of the proceedings. Cf. Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).
 
 
 30
 The distinction, if there be one, must rest on the absence of a request by Bisignano and Russo to have counsel present during the interrogation. But both reason and precedent dictate against such a distinction.
 
 
 31
 At every other stage of the proceedings at which a right to counsel attaches, the right does not depend on a request for counsel nor can it be presumed that failure to request counsel constitutes a waiver of that right. Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Uveges v. Com. of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); see also Commonwealth ex rel. Remeriez v. Maroney, 415 Pa. 534, 204 A.2d 446 (1964); Commonwealth ex rel. Goodfellow v. Rundle, 415 Pa. 528, 204 A.2d 446 (1964); Commonwealth ex rel. O'Lock v. Rundle, 415 Pa. 515, 204 A.2d 439 (1964).
 
 
 32
 We can perceive no sound basis for holding that a request for counsel is a prerequisite for the right to counsel at the interrogation stage while it is not at any other. The test of waiver is the same, or should be, no matter what stage of the proceedings is at issue, so long as the right has attached. In Escobedo the Supreme Court recognizes this principle: 'The accused may, of course, intelligently and knowingly waive his privilege against self-incrimination and his right to counsel either at a pretrial stage or at the trial. See Johnson v. Zerbst, 304 U.S. 458 (58 S.Ct. 1019, 82 L.Ed. 1461). But no knowing and intelligent waiver of any constitutional right can be said to have occurred under the circumstances of this case.' 378 U.S. at 490, n. 14, 84 S.Ct. at 1765. This language of the Court compels the conclusion stated by Mr. Justice White in his dissenting opinion that the only logical result is to require an intelligent waiver: 'Although the opinion purports to be limited to the facts of this case, it would be naive to think that the new constitutional right announced will depend upon whether the accused has retained his own counsel * * * or has asked to consult with counsel in the course of interrogation. * * * At the very least the Court holds that once the accused becomes a suspect and, presumably, is arrested, any admission made to the police thereafter is inadmissible in evidence unless the accused has waived his right to counsel.' 378 U.S. at 495, 84 S.Ct. at 1767.
 
 
 33
 No sound reasoning that we can discover will support the conclusion that although at other stages in the proceedings in which the right attaches there must be an intelligent waiver, at the interrogation level a failure to request counsel may be deemed to be a waiver. In reviewing the facts of Escobedo, it is apparent that Escobedo was well informed of his constitutional rights since some days previously he had conferred with counsel and it must be assumed, as the Supreme Court did assume, that counsel had informed Escobedo of his right to remain silent and the effect any statement that he made might have. Yet the Supreme Court held that such prior instructions were inadequate when Escobedo was faced with the incriminating statements of his alleged partner in crime. The Supreme Court held that at that very moment when he was confronted with these statements, he was entitled to the guiding hand of counsel.
 
 
 34
 The request by Escobedo to consult with his attorney is in and of itself evidence that he was aware of his constitutional rights. Thus, it would seem that to suppress a confession of one knowledgeable of his rights but who has nonetheless confessed and to admit into evidence a confession of one who might be unaware of his rights at the time of his confession would be sophistry. The view that we have expressed here has been well stated by the California Supreme Court: 'To require the request would be to favor the defendant whose sophistication or status had fortuitously prompted him to make it.' People v. Dorado, 42 Cal.Rptr. 169, 178, 398 P.2d 361, 370 (1965), cert. denied, 381 U.S. 937, 85 S.Ct. 1765, 14 L.Ed.2d 702 (1965). Professors Kamisar and Choper have stated this same rationale in slightly different language: 'If the right is deemed sufficiently important to be a due process requirement, why is it not sufficiently important to be made available to the unwary, ignorant and inexperienced as well as to the informed, sophisticated, and professional?' Kamisar & Choper, supra at 61.[5] 'Failure to insist on an intelligent waiver of the right to remain silent inevitably discriminates against the ignorant and inexperienced, who may answer questions without any apparent coercion simply because they believe that the police have the authority or power to make them.' 78 Harv.L.Rev. 177, 217, 220 (1964). See also Enker & Elsen, supra at 77; 107 U.Pa.L.Rev. 286, 289 (1959).
 
 
 35
 We find ample judicial authority supporting the view that the right to counsel at the interrogation stage does not depend on a request by the person interrogated, although there are decisions to the contrary. In addition to the California decision, Dorado, quoted supra, the Supreme Court of Oregon in a case similar to the case at bar has held that the failure to warn the accused of his right to remain silent requires that the confession be suppressed. State v. Neely, 395 P.2d 557 (1964). See also Commonwealth v. McCarthy, Mass., 200 N.E.2d 264 (1964); State v. Dufour, 206 A.2d 82 (R.I.1965); State v. Hall, 397 P.2d 261, 268 (Idaho 1964) (opinion of McQuade, J.); Campbell v. State, 384 S.W.2d 4 (Tenn.1964). The appellate courts of Illinois, People v. Hartgraves, 31 Ill.2d 375, 202 N.E.2d 33 (1964), cert. denied, 85 S.Ct. 1104 (1965); Maryland, Sturgis v. State, 235 Md. 343, 201 A.2d 681 (1964),[6] and New Jersey, State v. Scanlon, 84 N.J.Super. 427, 202 A.2d 448 (1964),[7] have, however, held that a request is necessary for the Escobedo rationale to come into play. Accord, People v. Gunner, 15 N.Y.2d 226, 257 N.Y.S.2d 924, 205 N.E.2d 852 (1965); Bean v. State, 398 P.2d 251 (Nev.1965); Browne v. State, 24 Wis.2d 491, 129 N.W.2d 175, 131 N.W.2d 169 (1964), cert. denied, 379 U.S. 1004, 85 S.Ct. 730, 13 L.Ed.2d 706 (1965). The Supreme Court of Pennsylvania, in three recent cases, Commonwealth ex rel. Linde v. Maroney, 416 Pa. 331, 206 A.2d 288 (1965); Commonwealth ex rel. Storch v. Maroney, 416 Pa. 55, 204 A.2d 263 (1964) and Commonwealth v. Coyle, 415 Pa. 379, 203 A.2d 782 (1964), has also taken the view that a request is necessary. However, in the Linde decision, supra, Justice Roberts wrote a separate concurring opinion in which he stated: 'While I join in the majority opinion and conclusion, I am not entirely untroubled by the fact that, at least in part, our test turns on a request for counsel. There are some logical problems in making it do so. * * * Among other things, I am somewhat bothered by the fact that a 'request test' may protect only those who know enough to request counsel. Those most likely to know that they should request counsel are persons often in criminal trouble before, perhaps the habitual criminal. Those who are having their first encounter with the law may be much less likely to have either the knowledge or presence of mind to request counsel.' However, Justice Roberts was willing 'for the present' to concur due to the Supreme Court's frequent references in Escobedo to the "circumstances' of that case.' Justice Roberts concluded his concurring opinion by noting, 'No doubt, we shall have further guidance from the Supreme Court of the United States on this subject. In any event, if the law enforcement officers of this Commonwealth unfailingly advise one upon whom the spotlight of accusation has swung that he has a right to counsel, then the stress in this area will be substantially lessened.' 416 Pa. at 338-339, 206 A.2d at 292.
 
 
 36
 While we recognize the split of opinion in the state courts on this issue, we note the reported decisions in the federal courts favorable to the view that we adopt here. Wright v. Dickson, 336 F.2d 878 (9 Cir. 1964); United States v. Guerra, 334 F.2d 138, 144 (2 Cir.) (dictum), cert. denied, 379 U.S. 936, 85 S.Ct. 337, 13 L.Ed.2d 346 (1964); United States ex rel. Rivers v. Myers, 240 F.Supp. 39 (E.D.Pa.1965); United States ex rel. Dickerson v. Rundle, 238 F.Supp. 218 (E.D.Pa.1965); Galarza Cruz v. Delgado, 233 F.Supp. 944 (D.P.R.1964). Contra, United States ex rel. Townsend v. Ogilvie, 334 F.2d 837 (7 Cir. 1964), cert. denied, 379 U.S. 984, 85 S.Ct. 683, 13 L.Ed.2d 574 (1965); Mitchell v. Stephens, 232 F.Supp. 497 (E.D.Ark.1964). In Lee v. United States, 322 F.2d 770 (5 Cir. 1963), decided prior to the Supreme Court decisions in Massiah and Escobedo, the Court of Appeals for the Fifth Circuit recognized the right to counsel at the post-indictment interrogation stage and held that the right is not lost by the failure to request counsel. Although another panel of the same circuit refused to follow Lee on the broad ground that there was no right to counsel at that stage of the proceeding, Lyles v. Beto, 329 F.2d 332 (5 Cir. 1964), the Supreme Court has vacated that latter judgment and remanded the case back to the Court of Appeals in light of its decision in Massiah. 379 U.S. 648, 85 S.Ct. 613, 13 L.Ed.2d 552 (1965).
 
 
 37
 The Court of Appeals for the District of Columbia has, in dictum, agreed with the result we reach here. Greenwell v. United States, D.C.Cir., 336 F.2d 962, 966 (1964).[8] In two later decided cases of that Circuit, the court found the facts to be sufficiently distinguishable from Escobedo and we think that these decisions are not inconsistent with the result we have reached. In Jackson v. United States, D.C.Cir., 337 F.2d 136 (1964), cert. denied, 380 U.S. 935, 85 S.Ct. 944, 13 L.Ed.2d 822 (1965), that court held that where the defendant had been specifically told of his right to counsel on at least two separate occasions and had been warned three times of his right to remain silent his admissions and confession were admissible. In Long v. United States, D.C.Cir., 338 F.2d 549 (1964), the court held that where the defendant confessed immediately upon being approached by the police and before the police could even identify themselves and after the police then informed the defendant of their identity and of the defendant's right to remain silent, he, nevertheless, offered further details of the crime, the admissions and confession were admissible.
 
 
 38
 We can find no effective waiver here. 'The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). Compare Doughty v. Sacks, 175 Ohio St. 46, 47, 191 N.E.2d 727 (1963), rev'd per curiam, Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964). Accordingly, the judgments of the court below must be reversed and the cases will be remanded with directions that writs of habeas corpus issue but without prejudice to the right of the State authorities to try the defendants again on the same charges.
 
 
 39
 On Petition for Rehearing and on Petitions for Leave to Intervene as Amici Curiae
 
 
 40
 Before KALODNER, Chief Judge, and BIGGS, McLAUGHLIN, STALEY, HASTIE, FORMAN, GANEY, SMITH and FREEDMAN, Circuit Judges.
 
 
 41
 PER CURIAM.
 
 
 42
 A petition for rehearing and petitions for leave to intervene as amici curiae, to file a brief and, if rehearing be granted, to participate in oral argument, have been filed in these cases by prosecuting officers and prosecuting officers' associations as set out in the footnote.[9] We entered orders allowing these prosecuting officers and prosecuting officers' associations to file briefs in support of their respective contentions, reserving for future determination the question as to whether or not rehearing should be granted. Extensive briefs have been filed by the prosecuting officers and the prosecuting officers' associations referred to and answering briefs have been filed by counsel for the relators. We note that the brief filed jointly by the District Attorney in and for the City and County of Philadelphia and by the two District Attorneys Associations contains factual material, relating to the issue of the possible retroactivity of our decision, which was not in evidence before the court below, is not part of the records in these cases,[10] and which was called to our attention for the first time on June 1, 1965, when the petition for rehearing was filed by the County Prosecutor of Essex County.
 
 
 43
 Portions of the briefs filed by the prosecuting officers and by the prosecuting officers' associations are devoted to arguments to demonstrate that our decision, any issue of retroactivity of the application of its principles aside, is erroneous.
 
 
 44
 As to any issue of the application retroactively of the principles enunciated by our opinion and decision of May 20, 1965, we state that we have considered and weighed carefully the contents of the petitions and their supporting briefs. As has been indicated, the issue of the effect of the retroactive application of the principles enunciated by this court was not before the court below and was raised for the first time before this court by the petitions referred to in note 1, supra.
 
 
 45
 Our rulings and decision in these cases were considered carefully in the light of the records and the issues which were briefed and argued in the court below and in this court. Consequently we decline, unless directed to do so by higher authority, to pass on the issue of retroactivity so lately raised. The decision of that issue should be deferred to some future and more appropriate occasion, should such arise, when the issue of retroactivity had been raised in the trial court and before this court on appeal from the trial court and not, for the first time, by way of a petition for rehearing or by means of petitions for intervention as amici curiae as here.
 
 
 46
 The issues involved in the instant cases are of such importance that they should be put before the reviewing Tribunal as promptly as possible.
 
 
 47
 Rehearing will be denied.
 
 
 48
 McLAUGHLIN, Circuit Judge (dissenting).
 
 
 49
 I dissent from the denial of the petition for rehearing before the court en banc in these appeals.
 
 
 50
 Escobedo is the governing law. That opinion strictly held that for a statement by an accused to be excluded from being used against him at a criminal trial, the process must be accusatory, its purpose to elicit a confession, '* * * and, under the circumstances here, the accused must be permitted to consult with his lawyer.' Escobedo v. State of Illinois p. 378 U.S. 492, 84 S.Ct. p. 1766. Earlier in the opinion the Court had factually stated that Escobedo had an attorney and had conferred with him about this particular case prior to being interrogated by the police. The Court earlier in the opinion stressed that its narrow holding included as a sine qua non that '* * * the suspect had requested and been denied an opportunity to consult with his lawyer, * * *.' Konigsberg meticulously follows Escobedo and does not eliminate the above major requirement as would appear from page 12 of the present opinion.
 
 
 51
 In view of the above anything else is a minor matter but it should be said that the district judge who saw and heard the witnesses notes that both an electroencephalogram and a neurological examination found Russo to be within normal limits; that he was within the average intelligence range; that the worst thing that could be mentioned about his mentality was that he '* * * never learned to react to others except in an impulsive and poorly controlled manner with hostility and violence and unmindful of the consequences; * * *.' The court specifically holds that neither '* * * Russo or Bisignano was a mentally disturbed person of such low intelligence or capacity as to make him susceptible to police interrogation.'
 
 
 52
 If the Supreme Court desires not merely to widen the Escobedo rule but to strike from it one of its three required elements and so promulgate a new test, that is up to the Supreme Court alone. Without that action an intermediate appellate tribunal has no duty and no right to make such pronouncement. In so doing, proper law enforcement under the Supreme Court mandate is unwarrantably confused, weakened and broken down.
 
 
 53
 Fairness in crime investigation is no one-way street. A person interrogated with reference to a crime is entitled to full fair play but so is the investigative authority. Due process for law and order-- for the public, by proper questioning of suspects has its rightful place under Escobedo. The majority here in its enthusiasm would simply eliminate lawful authority from the equal protection of due process. The destruction of the true balance of criminal justice could well be the net result of the court opinion.
 
 
 54
 FORMAN, Circuit Judge (concurring).
 
 
 55
 As a senior judge, I am restricted from voting on the petition for rehearing before the court en banc. Limiting myself to the question of whether the panel should grant rehearing, I have concluded that it should not and, therefore, concur in my colleagues' denial of the petition. I am constrained, however, to rest on grounds other than those relied upon by the majority.
 
 
 56
 While the litigants never raised the legal issue of Escobedo's retroactivity prior to filing the petition for rehearing, the relevant facts, namely, the date of the exhaustion of direct appeal remedies by the habeas corpus applicants (June 17, 1963), and the date of the Escobedo decision (June 22, 1964), were before the court and are matters of record. United States v. Bowles, 331 F.2d 742 (3 Cir. 1964) is not controlling for there the relevant facts were definitely absent from the record. Any other factors bearing on the ultimate determination of the issue are purely legal in nature.
 
 
 57
 If I had not felt Escobedo to be retroactive, I would not have favored reversal of the District Court. It is not unusual, particularly in the light of the failure of litigants to raise the issue, to apply new constitutional rules to cases finalized before the promulgation of the new rule, without discussion. See Linkletter v. Walker, 381 U.S. 618, 628, 85 S.Ct. 1731, 14 L.Ed.2d 601 (text and n. 13) (1965). Indeed, we could not have ruled in the manner in which we did unless Escobedo was to be applied retroactively. And Russo and Bisignano should not have been given the benefit of Escobedo unless we were willing to apply it retroactively.
 
 
 58
 In support of the rehearing, the petitioner and amici themselves rely heavily on Linkletter v. Walker in which the Supreme Court declined to give retroactive effect to Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). There is, however, an important distinction between Mapp and Escobedo relative to the question of their retroactivity. In Mapp, the Supreme Court dealt with evidence seized in a search held to be violative of the accused's fourth amendment rights. There was no question of the reliability of the evidence sought to be introduced subsequent to the illegal search. Mapp thus enunciated a rule limited to deterring unlawful police activity. Linkletter gave emphasis to this factor in rejecting arguments favoring Mapp's retroactivity, Linkletter v. Walker, 381 U.S. at 637, 85 S.Ct. 1731, and the petitioner follows suit herein. At the same time, the Supreme Court announced a standard for measuring when a new constitutional rule should be applied retroactively. The test is: When the repudiated rule could have affected 'the fairness of the trial-- the very integrity of the fact finding process'-- the new constitutional principle is to be applied retroactively. As measured by this standard Escobedo should be applied retroactively. The problems of the administration of justice considered in Mapp may not thwart such application here. See Linkletter v. Walker, 381 U.S. at 637-639, 85 S.Ct. 1731.
 
 
 59
 The new rule of Escobedo was not one limited to deterring unlawful police activity. To be sure, that was one of the important considerations in announcing the rule. But there were others of at least equal importance. Two critical factors emerge which reflect the underlying policy of the Escobedo rule, namely, (1) the assistance of counsel at the accusatory stage of the proceedings enables the accused to properly exercise his rights, and (2) implementing a right to counsel at the accusatory stage assists in the difficult task of resolving the question of coercion where a confession is obtained during a closed interrogation. See Note, The Curious Confusion Surrounding Escobedo v. Illinois, 32 U. Chi. L. Rev. 560, 563-64 (1965) and cases cited therein. When a conviction is sought assisted by the introduction of a confession, failure to apply the Escobedo rule (which now enables an accused to properly exercise his rights at the accusatory stage of the proceeding and maximizes the ability of the judiciary to rule on the voluntariness of a confession) has the potential to impair the fairness of a trial and to weaken the integrity of the fact finding process.
 
 
 60
 The petitioner seeks to avoid this result by emphasizing that both the District Court and this court found Russo's and Bisignano's confessions voluntary. That being so, argues the petitioner, their introduction into evidence could not have resulted in an unfair trial or distorted the fact finding process. The petitioner, however, misconceives the Escobedo standard of confession admissibility. We affirmed the District Court's findings of voluntariness by considering the traditional grounds of physical coercion and mental overbearing in the light of the facts available to us. A finding of either would serve as a basis for ruling a confession involuntary and inadmissible. Escobedo, however, made the factor of counsel's non-participation at the accusatory stage of the proceeding another independent basis for confession inadmissibility. This new standard, as is indicated above, in part stemmed from the view that at the accusatory stage of the proceeding the inability to implement one's rights may have a potent effect on the voluntariness of a confession. The difficulty in making a judicial determiation of voluntariness, absent counsel's participation at the accusatory stage of the proceeding, heightens the potentiality for undetermined involuntariness. As was indicated in our opinion in the instant case, a greater reliance has been placed on the presence or absence of counsel as a means of determining voluntariness of confessions. Thus, though it could not be said that the traditional standards of voluntariness were violated, based on the record before us, neither could it be said that the potential of an involuntary confession was absent in the light of the policy underlying Escobedo.
 
 
 61
 The foregoing impels me to the conclusion that rehearing by the panel should be denied, but for my part I would clearly state that Escobedo has been given retroactive effect in these cases.
 
 
 
 [1]
 The New Jersey Crim.Prac.R. 3:2-3 provides in pertinent part:
 '(a) Appearance. * * * A person making an arrest without a warrant shall take the arrested person, without unnecessary delay, before the nearest available magistrate * * *.
 '(b) Preliminary Hearing. The magistrate shall inform the defendant of the complaint against him and if a copy of the complaint has not previously been furnished to the defendant, he shall be supplied with a copy thereof. The magistrate shall also inform the defendant of his right to retain counsel or, if indigent, of the privilege of having counsel assigned, and of his right to have a preliminary examination. The magistrate shall allow the defendant reasonable time and opportunity to consult counsel. He shall also inform the defendant of his right to make a statement not under oath as to the charge against him, that he is not required to make such a statement and that any statement made by him may be used against him. * * *
 '(c) Preliminary Examination. * * * If the defendant does not waive (preliminary) examination, the magistrate shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him. If, from the evidence, it appears to the magistrate that there is probable cause to believe that an offense has been committed and the defendant has committed it, the magistrate shall forthwith bind him over to await final determination of the cause, otherwise, the magistrate shall discharge him * * *. The magistrate shall admit the defendant to bail as provided by these rules.'
 
 
 [2]
 Cf. Slovenko, Representation for Indigent Defendants, 33 Tul.L.Rev. 363, 371 (1959)
 
 
 [3]
 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Council for his defence.'
 
 
 [4]
 It is to be noted that the court below, when it filed its opinion in the instant cases, did not have the benefit of these two far-reaching decisions of the Supreme Court
 
 
 [5]
 See also Lockhart, Kamisar & Choper, Constitutional Law, 1964 Supp. at p. 39, notes 4-6; Note, 19 Rutgers L.Rev. 111 (1964); 53 Cal.L.Rev. 337, 359-61 (1965)
 
 
 [6]
 The rule in Maryland is now well-settled. Davis v. State, 236 Md. 389, 204 A.2d 76 (1964); Henn v. State, 236 Md. 615, 203 A.2d 899 (1964); Green v. State, 236 Md. 334, 203 A.2d 870 (1964); Parker v. Warden, 236 Md. 236, 203 A.2d 418 (1964); Hyde v. Warden, 235 Md. 641, 202 A.2d 382 (1964); Mefford v. State, 235 Md. 497, 201 A.2d 824 (1964); Bichell v. State, 235 Md. 395, 201 A.2d 800 (1964)
 
 
 [7]
 The New Jersey Supreme Court has indicated that it will follow this result. State v. Smith, 43 N.J. 67, 202 A.2d 669 (1964), cert. denied, 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965); State v. Vigliano, 43 N.J. 44, 202 A.2d 657 (1964). See also State v. Johnson, 43 N.J. 572, 206 A.2d 737 (1965)
 Apparently, the Supreme Courts of Virginia, Wansley v. Commonwealth, 205 Va. 412, 137 S.E.2d 865 (1964), cert. denied, 380 U.S. 922, 85 S.Ct. 920, 13 L.Ed.2d 806 (1965) and Ohio, McQueen v. Maxwell, 177 Ohio St. 30, 201 N.E.2d 701 (1964), will also require a request for counsel. Ohio adhered to this position in State v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349 (1964), a case which was remanded back to it by the Supreme Court, 378 U.S. 582, 84 S.Ct. 1922, 12 L.Ed.2d 1037 (1964), for reconsideration in light of Massiah.
 
 
 [8]
 See also, Queen v. United States, 118 U.S.App.D.C. 262, 335 F.2d 297 (1964); Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964 (1964)
 
 
 [9]
 The petition for rehearing was filed by the County Prosecutor Essex County, New Jersey, by the Assistant Prosecutor, who appeared on behalf of the respondents. The Attorney General of New Jersey has filed a brief entitled 'Brief on Rehearing of Amicus Curiae, the State of New Jersey.'
 Petitioners for leave to intervene as amici curiae, to file a brief, and if rehearing be granted, to participate in oral argument, were filed by the District Attorney in and for the City and County of Philadelphia, by the National District Attorneys Association and by the District Attorneys Association of Pennsylvania.
 
 
 [10]
 See United States v. Bowles, 331 F.2d 742, 748-749; Rehearing den. 334 F.2d 325 (3 Cir. 1964)