## BICHELL *v.* STATE

[No. 395, September Term, 1963.]

*Decided July 2, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT and HORNEY, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Edward B. Rybczynski* for appellant.

*Robert F. Sweeney, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Andrew J. Graham, State's Attorney* and *Assistant State's Attorney, for Baltimore City,* respectively, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellant was convicted by Judge Cullen, sitting without a jury, of two armed robberies and given two concurrent five-year sentences. On appeal, he argues first that his arrest was illegal and his confession was inadmissible because made while he was in illegal detention, and without the advice of a lawyer, and, second, that there was no evidence that any money was taken in the second holdup.

The testimony showed that early in the morning of April 25, 1963, two Little Tavern Shops were entered by a man who

"pulled out a gun" and told the waitress on duty to give him the money in the cash register and in the safe. At one of the Shops an attendant observed and reported to the police the color and license number of the car in which the man with the gun was driven away by another man. Sergeant Mina testified that the police investigation had revealed that the getaway car was owned by one Kaleo and that a man named Albert Lehman and the appellant, Bichell, were at a drinking party with Kaleo and others and took Kaleo's keys from his pocket and used his car in the holdups. The appellant drove the car, Lehman went in and held up the Shops, and they split the proceeds. The description of the car was "put on the air" by the police and it was soon "picked up" with Kaleo driving it. As a result, Lehman was arrested and "picked out of line-ups as the man who held the gun on these two girls who were on the witness stand" and Lehman told Sergeant Mina that the appellant was the driver of the getaway car in the two holdups.

Thereupon, the Baltimore Police Department put out an official request to neighboring police departments and officials to apprehend one John J. Bichell (the appellant) who was wanted by it for armed robbery. On May 6 Bichell was arrested by agents of the Federal Bureau of Investigation and turned over to a Baltimore policeman. No federal agent testified as to the details of the arrest, but Bichell, who took the stand for the limited purpose of describing how he was taken into custody, said that he was in his brother's house in Baltimore when six F. B. I. agents came in with a warrant for his brother's arrest and, after they had knocked the knob off a side door, were let in the front door by "the girl friend" (whether the "girl friend" of the appellant or of his brother does not appear—there was one of each in the house). After asking appellant who he was, and being told, an agent said it was unfortunate for appellant that he happened to be there with his brother because "we understand the police want you in the City, so we are taking you in too."

Judge Cullen found specifically that there was probable cause for the arrest. Clearly the Baltimore police had probable cause to believe the appellant guilty of a felony and Judge Cullen was justified in drawing the inferences he must have drawn: (1)

that the official teletype message asking apprehension of appellant as an armed robber had in the ordinary course of police business come to the official attention of the Federal Bureau of Investigation, and (2) that appellant's arrest by reason of the Bureau's understanding that the City police wanted him was in response to the official request of City police that he be apprehended. He therefore properly concluded that the appellant's arrest by the F. B. I. was upon probable cause.

The uncontroverted testimony was that appellant was arrested about nine o'clock in the morning, that Sergeant Mina told him at one p.m. of the same day that it was a serious case and he could get a lawyer, and that he replied he thought his "girl friend" would get one. Interrogation of appellant began at 4:15 p.m. that afternoon and lasted only an hour. The statement he gave shows he was advised that anything he said must be voluntary on his part and given freely, without threat or promise, and that anything he said could be used for or against him in court. (Appellant was no novice in crime. He was out on bail when he took part in the armed robberies.) The testimony of the police, also uncontroverted, was that the confession appellant gave was completely voluntary in every sense. Appellant does not contend to the contrary nor did he testify that he asked for or wanted a lawyer before he confessed. In argument before us, both printed and oral, he contends only that because the police did not furnish him with a lawyer or tell him in so many words he need not answer questions until he consulted a lawyer, that his confession, although clearly not compelled, was not admissible.

*Escobedo v. Illinois*, 378 U. S. 478, does not go this far and the facts here and the facts there (to which the Court limited the holding) are significantly different. We find no error in the admission against him of appellant's confession.

There is no substance to appellant's claim that it was not proven that any money was taken in the second holdup. Appellant said in his statement, after describing the first robbery: "When we got to the Little Tavern on W. Belvedere Ave. Al went in and held up them too. When he came out of the Little

400

Tavern I think he only got $29.00. I got half of that too." This, coupled with the testimony of the waitress at the Belvedere Avenue Shop clearly was enough for the trier of fact to find a robbery.

*Judgment affirmed.*