was not useful work, but was done to occupy his mind.

 The amounts claimed by the taxpayer qualify as a deduction under § 105(d).

The parties to this action will prepare and submit to the Court within 30 days from the date of this memorandum a judgment for the plaintiff for the proper amounts of refund for the years 1956, 1957, 1958 and 1959, with statutory interest.

Anthony Francis **FAULKNER**, Petitioner,

v.

**UNITED STATES of America**, Respondent.

Civ. No. 5012.

United States District Court
E. D. Virginia,
Norfolk Division.

March 29, 1965.

John M. Ryan, Norfolk, Va., for petitioner.

James A. Oast, Jr., Asst. U. S. Atty., Norfolk, Va., for respondent.

WALTER E. HOFFMAN, Chief Judge.

Petitioner, proceeded against with his consent under the Juvenile Delinquency Act, was convicted on his plea of not guilty following a trial on December 2, 1964. He was represented by able counsel. Except for minor charges pertaining to violations of Naval Regulations, his presentence report was favorable. Imposition of sentence was suspended during his minority and he was placed on probation under the usual conditions. He was then returned to the Navy.

On February 23, 1965, the probation officer reported that petitioner had entered guilty pleas to three separate charges before a Special Court Martial at the United States Naval Air Station on February 8, 1965. These charges involved the wrongful appropriation of Navy trucks allegedly occurring on January 20–21–25, 1965. This Court directed the issuance of a bench warrant and petitioner was surrendered to the civil authorities as an alleged probation violator.

When brought before the Court, the charges as contained in the probation officer's report were read to petitioner. Upon being advised as to his right to counsel, petitioner requested the assignment of same. The Court thereupon appointed John M. Ryan and, within a few days thereafter, the present motion to vacate the sentence imposed on December 2, 1964, was filed; the United States immediately answered; and the case was heard on March 26, 1965, three days after the motion was filed. Because the petitioner was only 18 years of age at the time of his conviction, and is now in federal custody, the prompt ruling on the motion is dictated.

The background of the case lies in the theft of a transistor tape recorder, owned by the Navy, and having a value in excess of $100.00. The offense occurred on or about June 30, 1964. In making his investigation, the agent of the Federal Bureau of Investigation had reason to believe that petitioner had handled the tape recorder. Finally, on July 14, 1964, the agent interviewed petitioner at the Naval Air Station. Contrary to the usual assertions made in such cases, the petitioner concedes that Agent Tonnesen identified himself, told petitioner about his investigation to date, advised petitioner that he had a right to consult counsel, and that anything said by petitioner to Tonnesen could be used against petitioner. Initially, petitioner denied any implication with the crime but after a few moments confessed to same. Petitioner did make some statement to the effect that he couldn't afford a lawyer, but at no time displayed any reluctance to talk to Tonnesen. The testimony indicates that there was some discussion about a lie detector test and, while petitioner contends that the agent first brought up this subject and the agent vigorously denies same, we think that this is totally irrelevant as no lie detector test was ever given. The entire period of the interview, including the

time required for writing the confession, did not exceed one hour. Petitioner admits having examined the written confession before signing same. He agrees that Agent Tonnesen was very polite and most cooperative. At one time during the interview petitioner began to cry and the agent interrupted the conversation to get a soft drink for petitioner.

Counsel for petitioner has, by way of background, established that petitioner is one of nine children; that at the age of 15 petitioner had a court experience in Connecticut when he rebelled against efforts by two young men in the attempted commission of an immoral act; that when the police investigated the matter, they had reason to believe that petitioner was not telling the truth and insisted that petitioner take a lie detector test; that when the results of that test confirmed petitioner's allegations, the prosecution followed and the two men were convicted; that thereafter petitioner was threatened by the family of one of the young men who had been convicted and, according to petitioner, he became very nervous. He dropped out of school at the age of 16, went to work, and thereafter joined the Navy in July, 1963, at the age of 17. Apparently the extent of his nervousness, if any, was not apparent to the medical examiners of the Navy. His General Classification Test in the Navy reflects that he is only slightly below the average for enlisted men. His last grade in school was the eighth grade which he was repeating and did not complete before leaving to go to work.

Following the interview of July 14, 1964, petitioner asked Tonnesen whether he was under arrest. Petitioner had surrendered to Tonnesen a pawn ticket which he had received when the tape recorder was pawned. Tonnesen told petitioner that he was not under arrest and petitioner resumed his naval duties. On July 22, 1964, after receiving authority [1] to prosecute from an Assistant

---

1. The "authority" to prosecute is a procedure established to eliminate doubtful or frivolous prosecutions. The Agent undoubtedly had the legal authority to swear out a complaint but, in practically all cases, the matter is first submitted to the United States Attorney.

United States Attorney, Tonnesen telephoned petitioner and told him to come to the Federal Building for a hearing before the United States Commissioner. Petitioner voluntarily appeared. The Commissioner told petitioner of the nature of the complaint, petitioner's right to retain counsel, and his right to a preliminary hearing. Apparently the hearing was waived and petitioner was released on his own personal recognizance for his appearance on November 2, 1964, that being the date of the next grand jury at Norfolk.

On November 2, 1964, the case was called and petitioner was advised that the United States Attorney was willing to proceed under the Federal Juvenile Delinquency Act if petitioner desired this procedure to be followed. Petitioner was then told of his right to have counsel appointed to serve "free of charge" if he desired same. Upon indicating his desire for counsel, the Court appointed Andrew S. Fine; arrangements were made for petitioner to interview his attorney, and his personal recognizance bond was continued. On the following day, November 3, 1964, petitioner, with his attorney, elected to be proceeded against under the Juvenile Delinquency Act, after first being fully advised of the nature and consequences of signing the necessary consent form. The United States filed a criminal information, formal arraignment was waived and a plea of not guilty entered.[2] The case was set for trial on November 19, 1964. Petitioner requested that his personal recognizance bond be revoked and that he remain in custody until the trial.[3]

The sole thrust of petitioner's argument is that he was not advised on July 14, 1964, when interviewed by Agent Tonnesen that petitioner was entitled to have an attorney appointed by the United States District Court. He argues that the confession was obtained when petitioner was in the "accusatory" stage. He relies upon the language in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, which states in part:

"We hold only that when the process shifts from investigatory to the accusatory—when its focus is on the accused and its purpose it to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused *must* be permitted to consult with his lawyer."

Petitioner agrees that there is no judicial machinery available to appoint counsel when no complaint has been issued and there is no case in court, as was the situation existing on July 14, 1964. But, he says, the failure to establish any such machinery cannot deprive petitioner of his constitutional right to counsel and Escobedo states that he *must* be permitted to consult with his lawyer.

Much has been said and written on Escobedo. It is the subject of a divided court in Davis v. State of North Carolina, 4 Cir., 339 F.2d 770. Assuming arguendo that petitioner was, at some time during the interview, in the "accusatory" stage, we do not read Escobedo to foreclose, in all cases involving interviews, the taking of a voluntary confession where the party interviewed is advised of his right to counsel and thereafter voluntarily continues the interview which results in a written confession. In no case brought to our attention has the court gone so far as to say that a person being interrogated must be advised of a right to have counsel "appointed or assigned" in a matter which has

2. Later that day petitioner sent word that he would like to address the Court. He was brought into the courtroom and indicated that he wanted to change his plea. As his attorney was not present at the time, the Court merely advised petitioner to talk to his attorney about the matter. Nothing else followed and there was no change of plea.

3. This was due to the fact that petitioner was wanted by the Navy for being AWOL.

not yet reached the stage of a court proceeding.

Petitioner's counsel has ably and faithfully argued and briefed his contention. We cannot predict what will happen in the future but, at this writing, the constitutional rights of petitioner cannot be so extended. If petitioner's argument is correct and this is what the law implies, all interviews and interrogations by law enforcement officers are at an end.