[Crim. No. 193. Fifth Dist. Feb. 24, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CLARENCE HUTSON STAFFORD, Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and David L. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

BROWN (R. M.), J.—The defendant appeals from a judgment entered pursuant to a conviction by a jury for assault with intent to commit murder, in violation of section 217 of the Penal Code, and contends that a confession was obtained from him in violation of his constitutional rights and was improperly received in evidence.

The defendant is 43 years of age and prior to this occurrence had never been arrested. He was retired from the Air Force in July 1963. In the early morning hours of August 17, 1964, he assaulted one David Stairs, in the presence of an eyewitness, by firing four shots from a pistol, two of which struck and injured the victim. Defendant was arrested at about 3 o'clock that morning and incarcerated in the Fresno County jail. Shortly after 10 a.m. on the same day he gave a full confession, which was reported by a court reporter, at the county jail, to Deputy District Attorney Carmen Eanni and Detective Ivan Nyberg. The confession was introduced in evidence at the trial.

In urging reversal the defendant argues that he requested an attorney prior to making the confession, and that any statements made by him thereafter without the aid and advice of counsel were inadmissible. He also contends that he was an indigent and as such was entitled to be advised of his right to have appointed counsel. The People contend that the defendant was effectively advised of his constitutional rights, and despite such warnings, voluntarily waived those rights.

Trial was had on April 29th and 30th, 1965, after the decisions in *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361], were handed down. Although *People* v. *Schader*, 62 Cal.2d 716 [44 Cal.Rptr. 193, 401 P.2d 665] (May 11, 1965) had not been decided, the trial judge employed the procedures there outlined for determining whether or not a confession, claimed to have been obtained in violation of constitutional rights, is admissible. On a foundational *voir dire* examination, conducted outside the presence of the jury at the defendant's request, the court received evidence of the factual circumstances and the conversation leading up to the giving of the confession and determined that it met the standards of *Dorado*. The first question, then, relates to the function

of the appellate court where the trial court has, in accordance with now established procedure, made a determination that the defendant had knowingly and intelligently waived his right to counsel and his privilege against self-incrimination.

*Jackson* v. *Denno*, 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205], held applicable to the *Escobedo-Dorado* problem by *People* v. *Schader, supra*, 62 Cal.2d 716, 727, lodges in the trial judge ''the serious and weighty responsibility'' of making a determination as to whether there was a waiver of these substantial rights. (*Johnson* v. *Zerbst*, 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357].) The duty of the trial judge is expressed in *People* v. *Green*, 63 Cal.2d 561, 565 [47 Cal.Rptr. 477, 407 P.2d 653], thusly: ''If the prosecution again introduces the evidence of defendant's statements at the new trial, the trial judge, with the contention that the police obtained the statement in derogation of defendant's right to counsel, should preliminarily determine the issue of its admissibility. [Citation.] In reaching his decision, the trial judge will resolve the questions as to whether, prior to the rendition of the statement, the accusatory stage had been reached and whether defendant had been advised of his rights to an attorney and to be silent or had otherwise waived those rights.''

It is clear that the question of whether or not there has been a waiver is primarily a question for the trial judge and his determination thereon should not be disturbed by a reviewing court unless it is palpably erroneous.

At the foundational *voir dire* examination Detective Nyberg testified that he and Eanni went to the jail about 10 o'clock in the morning, unaccompanied by a stenographic reporter. Upon their request, the defendant was brought to the booking desk and a conversation there ensued. Mr. Eanni asked the defendant if he had an attorney; the defendant stated that he did not and asked if he could have an attorney; Mr. Eanni replied that the defendant had a right to have an attorney and that he did not have to say anything until he had contacted an attorney. The defendant was told that the officers wanted to take a statement and that if he wanted to give one they would call a court reporter to take it down. The defendant then agreed to give a statement, said that he didn't want to talk to his attorney first, and a court reporter was called. Mr. Eanni testified that he first asked the witness whether or not he had an attorney because if he did, Eanni would not have talked directly to the defendant; that after he advised

the defendant of his rights he asked him if he wanted to make a statement and the defendant replied that he would make a voluntary statement and that he didn't want to talk to his attorney first. The defendant testified that at the time he gave the statement he was informed by Mr. Eanni of his right to counsel and his right to remain silent; that when he was taken to jail the jailor offered to let him make a telephone call. Upon questioning by Mr. Eanni, the defendant testified:

"Q. All right. Now, after we had this conversation between yourself and I about your right to an attorney, your right not to give us a statement, did I in fact ask you whether you would volunteer us a statement? A. Yes.

"Q. And what did you say? A. I said—well, if I remember right, I said I would—the statement I have to make I would make it to anyone."

The trial judge then questioned the defendant and the following testimony was given:

"THE COURT: One question. At the time you made this statement to Mr. Eanni, were you aware that you had a right to make a statement or not to make a statement and this was a matter of your free choice?

"THE WITNESS: Well, actually I didn't know except for what Mr. Eanni—I was told by him what—

"THE COURT: After Mr. Eanni told you this, then did you believe that you had a right to tell him that you would make a statement or that you would not make a statement and that this was a matter of your free choice?

"THE WITNESS: Yes, sir. I didn't doubt Mr. Eanni in the least there. I figured what he told me was correct.

"THE COURT: Let me put it even in a more simple way: Did you know you had a right to tell Mr. Eanni that you would not make a statement and that would be the end of it?

"THE WITNESS: Well, I didn't actually know this, no, sir.

"THE COURT: Well, did you believe Mr. Eanni when he told you this?

"THE WITNESS: Yes, sir.

"THE COURT: And you also understood that you had a right to talk to a lawyer before you made any statement to anybody?

"THE WITNESS: Yes, sir."

We conclude that the trial judge's determination that the defendant knew and understood his constitutional rights and knowingly and intelligently waived such rights was correct and that the confession was properly received in evidence.

Defendant, however, rests his point upon Nyberg's testimony that at the outset of the conversation, when Eanni asked the defendant if he had an attorney the defendant replied in the negative and asked if he could have an attorney. It is contended that under authority of *People* v. *Anderson,* 63 Cal.2d 351, at page 362 [46 Cal.Rptr. 763, 406 P.2d 43], any further conversation with or questioning of, the defendant deprived him of his constitutional rights. In *Anderson,* the defendant repeatedly asked for counsel and his requests were ignored. The interrogation was then under way. The defendant was denying complicity and the police were accusing him and urging him to tell the truth. Other cases dealing with a request for counsel have been reviewed and do not aid the defendant here. In *People* v. *Smith,* 63 Cal.2d 779, 801-802 [48 Cal.Rptr. 382, 409 P.2d 222], the accusatory stage had been reached and defendant had not been informed of his right to counsel. As many as four times during the questioning he asked to be allowed to consult with an attorney; he was not allowed to do so but was told that he could seek legal advice as soon as the officers were through talking to him. In *People* v. *Luker,* 63 Cal.2d 464, 474 [47 Cal.Rptr. 209, 407 P.2d 9], Luker stated, before he gave the statements, that he did not wish to talk until he had contacted his attorney. The officers ignored the statement and continued to question him. It was held that denial of the right to counsel by evasion or neglect of the suspect's request for counsel constituted a constitutional violation. However, it is noteworthy that in the same case, Luker gave statements to the F.B.I. although the agents advised him on two occasions that he had a right to remain silent, a right to an attorney, and that anything that he said could be used against him. Statements given despite these warnings were held to have been properly received in evidence by the trial court. And in *People* v. *Stockman,* 63 Cal.2d 494, 501 [47 Cal.Rptr. 365, 407 P.2d 277], the defendants had been warned of their right to remain silent but none was told of his right to counsel. One defendant, Cathcart, asked for an attorney before making a statement. Another, Stockman, contacted an attorney by telephone but the attorney was unable to reach him before he confessed. The persistence of the police in continuing the interrogation after such requests were made known to them was held to have been a violation of the constitutional rights of these defendants.

In each of the cases briefly summarized above persistent interrogation was under way at the time of the request and such interrogation continued despite the request. Also, in each

of those cases the suspect had not been warned at all or had not been given both warnings. Those are also the facts in *Escobedo* and *Dorado*. Such is not our case. Here, the request for counsel was made at the outset of the conversation. Thereafter the defendant was advised of his constitutional rights and determined to make a voluntary statement, stating that he did not want an attorney. In *In re Schlette*, 232 Cal.App.2d 407 [42 Cal.Rptr. 708], the defendant had been offered opportunities to halt the interrogation and to contact his attorney, but stated he did not want an attorney. The reviewing court said: "Schlette's confession was not a product of ignorance of his right to silence or of denial of his right to counsel. The evidence, including his own testimony, demonstrates that before and during the interrogation in the sheriff's office during the night of March 9 he was fully aware of these rights. Their expression in the form of a police warning was thus superfluous. Far from demanding an attorney, Schlette said he didn't want one. He knowingly waived his right to silence and his right to counsel."

In *People* v. *Garner*, 234 Cal.App.2d 212, 222-224 [44 Cal. Rptr. 217] (contra *People* v. *Buchanan*, 63 Cal.2d 880 at page 886 [48 Cal.Rptr. 733, 409 P.2d 957]), the court found a waiver by conduct. So, here. Prior to the commencement of interrogation the defendant asked if he could have an attorney; he was then advised of his right to counsel and his right to remain silent and asked if he wanted to make a voluntary statement. He abandoned his request for counsel by stating, according to his own testimony, that he made a volunteered statement with knowledge of his rights. The trial judge was justified in concluding that he waived his rights.

Turning to the defendant's contention that, since he was indigent, the officers were under a duty to advise him of his right to have counsel appointed, it may first be noted that although the defendant testified at the trial that he did not at the time of his request have funds with which to employ an attorney, there is no indication in the record that the officers knew, or were charged with knowledge, that he was an indigent. ■ Defendant argues that the officers did not inquire into the indigent status of the defendant and they made no effort to obtain an attorney for him.

Language from this court's case of *People* v. *Palmer*, 236 Cal.App.2d 645, at pages 649 and 650 [46 Cal.Rptr. 449], serves as the answer to this argument. It is there said: "In the present case, the prerequisites for eliminating evidence of a confession, or a series of admissions, by a defendant are not all

present; for the authorities did effectively inform defendant of his right to counsel and of his right to remain silent. The evidence shows that the statements made by the defendant were free and voluntary; before the conversation, Officer Watson had specifically told him that he did not have to talk and that he had the right to an attorney. The record shows that Palmer understood what was said, and there is no virtue in the contention that something else should have been done other than the giving of the advice by the officer relative to his constitutional rights. (See *Faulkner* v. *United States* (1965) 240 F.Supp. 198; *Bichell* v. *State,* 235 Md. 395 [201 A.2d 800].)''

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 22, 1966. Peters, J., was of the opinion that the petition should be granted.