[Crim. No. 4088.   Third Dist.   Oct. 18, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JONATHON WILSON HANSARD, Defendant and Appellant.

H. Eugene Netherton, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, Raymond M. Momboisse and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—A jury found defendant guilty of two counts of receiving stolen property (Pen. Code, § 496). He appeals from the judgment of conviction.

We have reviewed the record and the facts of the case may be summarized as follows: On August 31, 1965, the proprietor of Del's Country Store, located at 9565 Folsom Boulevard in Sacramento County, discovered that his place of business had been burglarized. Four guns, some German medals and about $2.80 in change were found to be missing.

On September 7, 1965, the proprietor of a Great Orange stand, located at Folsom Boulevard and Bradshaw Road, discovered that his building had been broken into. He noticed that there were dirty towels on the floor and that the laundry bag in which they had been contained was missing. Also missing were cigarettes and other miscellaneous items.

Gerald C. Cook, a deputy sheriff for the County of Sacramento, took the report of burglary of the orange stand on September 7, 1965. He was informed that cigarettes, candy, chips, coke syrup and a laundry bag were missing. Cook returned to the orange stand the next day and the proprietor told him that the laundry bag was marked with the words "Community Linen Service."

On September 8, 1965, at approximately 10:30 a.m., Officer Cook was working in his regular patrol area in the vicinity of Zinfandel and Folsom Boulevard when he observed a jeep station wagon at that intersection in the rear of a Shell Service Station. Cook approached the jeep and saw one person asleep in the rear of the vehicle, several suitcases, a couple of cartons of cigarettes and a large, white bag marked "Community."

Cook then left the vehicle and called for a detective, and Inspector Bristo arrived. Cook explained the circumstances to Bristo and they returned to the station wagon. They found a

person still sleeping in the rear and the defendant in the front seat on the passenger's side.

Upon being asked for identification, defendant stepped from the car and gave the officers a draft card. Cook asked defendant where he obtained the laundry bag and he stated that it came with the jeep. After ascertaining that the vehicle had no registration, Inspector Bristo informed the defendant that he was under arrest for burglary. Bristo testified that at this time he advised defendant that he had a right to be represented by an attorney and a right to remain silent. Cook then awakened the sleeping person and recognized him as one William Pfennings.

Following the arrest, the officers searched the vehicle and found a gun under the passenger's seat and another weapon under the driver's seat. Bristo also found two guns in a suitcase bearing the name ''Jon Hansard'' on an identification sticker. While defendant was being checked for any further weapons, another person approached the vehicle, and as Bristo turned to see who it was, Pfennings broke and escaped.

The officers then took defendant to the sheriff's office. After being booked and placed in the detective holding tank, defendant was again informed by Inspector Bristo of his right to remain silent and of his right to talk to his attorney. Bristo then advised defendant that he had found out where the guns had come from.

During the questioning the talk switched to some Nazi war medals that defendant was wearing on his serape, and Bristo asked him if the medals had been taken in the burglary of Del's Country Store. Defendant replied that they were not, and then told Bristo that those medals could be found in the glove compartment of a 1957 Chevrolet station wagon belonging to a Roger Owens, who lived in Rancho Cordova. The inspector then asked the defendant if he wished to make a statement concerning the burglary of the orange stand or Del's Country Store, and defendant said he thought he'd better talk to his attorney before stating anything further. This interview between defendant and Bristo, which lasted about 15 to 20 minutes, was then terminated. Defendant was afforded the opportunity to call his attorney, but the call was not completed for the attorney was out.

Inspector Louis Fatur, at Bristo's behest, went to Roger Owens' home and in the glove compartment of the Chevrolet station wagon found a white sock containing six medals.

The guns discovered in the jeep station wagon by the sheriff's officers were identified by serial number and picture as those taken in the burglary of Del's Country Store. The medals were also identified as the same type sold in the store and taken from the store.

At the trial the defendant took the stand in his own behalf, testifying that he did not commit the burglaries or receive or conceal with knowledge any personal property stolen from the respective establishments. He stated that on the 7th or 8th of September he owned a jeep station wagon as a result of a trade with Roger Owens and that it had been kept at a Shell Service Station one block from Owens' house. Owens corroborated the fact that he had traded the jeep to the defendant.

Defendant testified further that he and William Pfennings both had luggage in the car and that the only suitcase with his name on it was a black suitcase or footlocker. He stated that he noticed the other property, which did not belong to him, about two days prior to his arrest; that Pfennings was the only other person to put property into the vehicle; and that he did not see the guns prior to his arrest. He also stated that he saw the laundry bag in the vehicle two or three days before his arrest.

With regard to the medals in Owens' car, the defendant testified that he had found them in the jeep. When he was questioned by Bristo about the medals, the defendant stated that he took it for granted that they were part of the burglary since Bristo had informed the defendant that medals were stolen from Del's Country Store. He stated that about a day or two before his arrest he put them in Owens' car without his knowledge, for the purpose of having the medals evaluated in Vacaville when they had the car there on business. The defendant also testified that both he and Pfennings had brown suitcases and that the guns were taken from the one belonging to Pfennings.

Defendant advances several arguments in support of his contentions that the trial court committed error during the trial. He first contends that the trial court erred in refusing to require the district attorney to make an election between charging the defendant either with burglary or receiving stolen property. The defendant's motion, made at the conclusion of the People's case, was denied.

The propriety of charging in separate counts both burglary and receiving stolen property, upon proper jury

instructions, was established in *People* v. *Taylor*, 4 Cal.App.2d 214, wherein the court stated on page 219 [40 P.2d 870] :

"While it is proper to charge in separate counts both burglary and receiving stolen property, upon the conclusion of the introduction of evidence the jury should be given appropriate instructions defining and distinguishing the rules applicable, so as to avoid the mistake of finding the accused guilty of receiving from himself property stolen by him during the commission of a burglary."

The record discloses that the court properly instructed the jury on the alternative aspect. The court in giving this instruction stated that should the jury find the defendant guilty of receiving stolen property, then of necessity they would have to find him not guilty on the burglary charge. These instructions comply with the rule set forth in *People* v. *Taylor, supra*, and thus there was no error in the trial court's refusal to require the district attorney to make an election between the two offenses.

Defendant's second contention is that his proposed jury instruction should have been given. The instruction reads :

"In addition to proof beyond a reasonable doubt that the property in question in this case was stolen and that the defendant received such property knowing the same to have been stolen, before the defendant can be convicted on a charge of receiving stolen property, it is essential that there be some evidence tending to show that defendant was not the thief."

In *People* v. *Kot*, 171 Cal.App.2d 9 [339 P.2d 889], the court held that it was not prejudicial error to refuse defendant's instruction that there must be evidence that defendant was not the thief. In *People* v. *Marquez*, 237 Cal.App.2d 627 [47 Cal.Rptr. 166], this court analyzed in great detail the history of the "unfortunate assumption" on which defendant's proposed instruction is based, and concluded that the state does not have to prove affirmatively that the thief was someone other than the defendant. On page 634 the court states :

"As a matter of statutory interpretation, to hold that section 496, subdivision 1, requires the state to assume the burden of proving that a defendant whom it has found withholding goods which he knew to be stolen was not the thief is to read something into the statute which is not there. . . .

"There is not a word in the statute which requires the state

to prove affirmatively that the thief was someone other than the defendant. The elements described as being necessary of proof are: (1) that the property was stolen, (2) that the defendant received or concealed or withheld the goods, and (3) that he knew that the goods were stolen.''

Thus, the trial court properly refused to give this proposed instruction.

■ Defendant next contends that the statements which he made to the investigating officer were improperly admitted into evidence or they were obtained in violation of his constitutional rights as set forth in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

*Dorado* established that no statement elicited by the police during interrogation may be used against a defendant at a criminal trial where (1) the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on defendant, (2) the defendant was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, and (4) the authorities had not effectively informed defendant of his right to counsel and his right to remain silent.

On appeal, for the first time, defendant claims that at no time was he advised of his constitutional rights; however, an officer from the sheriff's office testified that on two separate occasions he advised the defendant of his right to be represented by an attorney and of his right to remain silent.

■ It is not necessary that a written statement be obtained from a defendant acknowledging that he has been advised of his rights if the defendant was orally advised of his rights and he so understood that advice. (See *People* v. *Palmer,* 236 Cal.App.2d 645 [46 Cal.Rptr. 449].) In view of the warning as to his constitutional rights, the court properly received the statements made to the investigating officer. (See *People* v. *Luker,* 63 Cal.2d 464, 473 [47 Cal.Rptr. 209, 407 P. 2d 9]; *People* v. *Palmer, supra,* at pp. 649-650.) ■ Furthermore, it should be noted that defendant actually has no right to raise this particular point on appeal as no objection to the evidence nor motion to strike was made, and therefore the question was not properly reserved since the trial was post-*Dorado.* (*People* v. *Palmer, supra,* at p. 650; *People* v. *Martinez,* 239 Cal.App.2d 161, 166 [48 Cal.Rptr. 521].)

■ Finally, defendant contends that allowing the officer to testify to the fact that at one point in the interrogation the defendant stated that he thought he had better talk to his

attorney before stating anything further was an implied admission of guilt by silence when the defendant was exercising his constitutional right under *Dorado*. Defendant had objected to this portion of the officer's testimony and moved that it be stricken and moved for a mistrial, both of which motions were denied.

The accused's constitutional right to remain silent and to consult with an attorney "cannot be exploited to his disadvantage by conversion into an inference of guilty consciousness. . . ." (*People* v. *Stewart,* 236 Cal.App.2d 27, 31 [45 Cal. Rptr. 712].)

Since it is now the obligation of the prosecution to prove affirmatively (in a *Dorado* situation) that the accused was advised of his right to remain silent and to have an attorney, whenever an issue is raised as to whether that warning has or has not been given, some modification of the rule that it is error to admit evidence or argue concerning statements of an accused wherein he requests to see an attorney or refuses to talk as showing consciousness of guilt is necessary. If defendant had taken the stand and denied that he was warned of his constitutional rights, an issue would have been raised and it would have been proper for the prosecution, after a proper foundation was laid, to rebut that evidence by proof that the warnings had been given and that they were understood by the accused as evidenced by his decision to call an attorney and the placing of such a call. (See 1 Wigmore, Evidence (3d ed. 1940) § 13, p. 300.)

But when, as here, no issue is raised at the trial as to the sufficiency of the warning, a statement of the officer-witness that the warning had been given meets the *Dorado* test and further elaboration is unnecessary.

The circumstances under which the testimony was given in this case indicates it was offered for the improper and forbidden purpose of suggesting to the jury defendant's consciousness of guilt. The admission of the extrajudicial statement had been preceded by a statement by the officer-witness that the proper warning had been given, and introduction of defendant's extrajudicial statement was without objection. No *voir dire* cross-examination or testimony by appellant contradicting the fact that the warning had been given was held or asked for. The prosecutor had no reason to anticipate that the fact or adequacy of the warning would be challenged. Therefore admission of the statement was error.

It does not follow, however, that the admittance of this

statement constituted prejudicial error. (See *People* v. *Abbott*, 47 Cal.2d 362, 373-374 [303 P.2d 730] ; *People* v. *Bostick*, 62 Cal.2d 820 [44 Cal.Rptr. 649, 402 P.2d 529].) In *People* v. *Robinson*, 62 Cal.2d 889, the court stated, at page 896 [44 Cal.Rptr. 762, 402 P.2d 834] : "[I]ncriminating statements that do not constitute a confession are not prejudicial per se but require us to decide, after an examination of the entire cause, if it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the introduction of such statements." Statements which constitute less than a confession require the application of article VI, section 4½, of the California Constitution. (*People* v. *Stewart*, 236 Cal.App.2d 27, 33 [45 Cal.Rptr. 712].) The same rule applies to statements indicating consciousness of guilt.

Defendant did not confess nor did he admit the commission of any of the crimes charged. The record shows, however, that the stolen goods were found in a vehicle belonging to defendant. Two stolen guns were retrieved from a suitcase bearing defendant's name. Defendant "found" stolen German medals in his vehicle and placed them in another car for later use. He stated—after being advised of his rights—where the stolen medals could be found.

A careful examination of the entire record, in accordance with article VI, section 4½, of the California Constitution leads us to the conclusion that there was no reasonable possibility that a different result would have been reached by the jury had defendant's statement under discussion not been received in evidence.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.